UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICARDO FUENTES,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

<u>DECISION & ORDER</u>

13-CV-6201P

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Ricardo Fuentes ("Fuentes") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Fuentes's motion for judgment on the pleadings is denied.

# BACKGROUND

## I.    Procedural Background

Fuentes applied for DIB on March 10, 2010, alleging disability beginning on February 26, 2009, due to migraines, back injury, arthritis, depression, anxiety, shortness of breath, dizziness, frequent vomiting, chronic pain, tiredness, sleep disorder and panic attacks. (Tr. 164, 169).[1]  On May 24, 2010, the Social Security Administration denied Fuentes's claim for benefits, finding that he was not disabled.  (Tr. 73-74).  Fuentes requested and was granted a hearing before Administrative Law Judge Richard J. Ortiz-Valero (the "ALJ").  (Tr. 81-82, 106-10).  The ALJ conducted a hearing on June 27, 2011 in Rochester, New York.  (Tr. 35-72). Fuentes was represented at the hearing by his attorney Gregory Phillips, Esq.  (Tr. 35, 37).  In a decision dated July 13, 2011, the ALJ found that Fuentes was not disabled and was not entitled to benefits.  (Tr. 23-31).

On February 22, 2013, the Appeals Council denied Fuentes's request for review of the ALJ's decision.  (Tr. 1-5).  Fuentes commenced this action on April 19, 2013, seeking review of the Commissioner's decision.  (Docket # 1).

## II.    Relevant Medical Evidence[2]

### A.    Treatment Records

Treatment notes from Rochester Mental Health Center indicate that Fuentes received mental health treatment between September 2010 and May 2011.  (Tr. 239-61).  Those same notes suggest that Fuentes had previously received mental health treatment earlier in 2010, but had been discharged from treatment because he failed to "follow[] through."  (Tr. 260).

---

[1]  The administrative transcript shall be referred to as "Tr. __."

[2]  Those portions of the treatment records that are relevant to this decision are recounted herein.

During his evaluation in September 2010, Fuentes reported symptoms of depression, anxiety, interpersonal conflict and psychosocial stressors. (*Id.*). He was diagnosed with depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified. (*Id.*). According to Fuentes, his symptoms included sleeplessness, fatigue, low mood, tearfulness, hopelessness, feelings of worthlessness and instrusive worry. (Tr. 259). Renee Scanlon ("Scanlon"), MSW CASAC, Fuentes's primary therapist, recommended that he attend biweekly sessions and be evaluated by a psychiatrist. (Tr. 258). Treatment notes indicate that Fuentes was recently divorced, unemployed and having trouble obtaining medical insurance. (Tr. 255-56, 259).

On November 4, 2010, Fuentes reported that his symptoms of depression persisted. (Tr. 253). He canceled his remaining appointments in November and did not attend another appointment until December 7, 2010. (Tr. 250-52). During that appointment, Fuentes reported that he had been charged with DUI. (Tr. 250). Fuentes also reported that he had not been able to obtain medical insurance. (*Id.*). The treatment records indicate that Fuentes either cancelled or missed several appointments and did not attend another appointment until March 9, 2011. (Tr. 244-49). During that appointment, Fuentes was evaluated by Dr. Muhammad Cheema, who prescribed Remeron to aid sleep. (Tr. 244). On April 5, 2011, Fuentes attended an appointment with Scanlon, who advised Fuentes of the "importance of regular attendance to therapy for maximum benefit." (Tr. 243). During the appointment, Fuentes reported experiencing instrusive worry and depressive symptoms. (*Id.*).

Fuentes attended two more appointments with Scanlon in April 2011. (Tr. 241-42). During those appointments Fuentes reported that he continued to experience intrusive worry and depressive symptoms and that he had begun drug and alcohol therapy. (Tr. 241). During a May 2011 appointment with Scanlon, Fuentes reported that he was feeling better

because his legal concerns had been resolved.  (Tr. 239).  Despite this, Fuentes reported that he continued to feel depressed and requested an evaluation for medication because he had successfully obtained medical benefits.  (*Id.*).

     **B.**     <u>**Medical Opinion Evidence**</u>

     On May 14, 2010, state examiner Dr. Christine Ransom ("Ransom") conducted a consultative psychiatric evaluation of Fuentes.  (Tr. 194-97).  During the evaluation, Fuentes reported that he had completed the ninth grade in special education classes.  (*Id.*).  The report incorrectly indicates that Fuentes "has never held a job."  (*Id.*).  Fuentes reported that he had experienced depression for a long time, had difficulty sleeping, awakened frequently during the night, had an erratic appetite and experienced crying spells, irritability and low energy.  (*Id.*).  He also reported experiencing panic attacks and difficulty concentrating.  (*Id.*).

     Fuentes reported that he was able to care for his personal hygiene, but was inconsistent in cooking, cleaning, laundry and shopping due to his low motivation.  (*Id.*).  He reported that he was able to drive.  (*Id.*).  According to Fuentes, he did not socialize and avoided contact with family and friends.  (*Id.*).

     Upon examination, Ransom noted that Fuentes appeared unkempt with poor personal hygiene.  (*Id.*).  Ransom opined that Fuentes had slow, halting speech, coherent and goal-directed thought processes, moderately dysphoric and tense affect, clear sensorium, good orientation, and borderline intellectual functioning with a somewhat limited general fund of information.  (*Id.*).  Ransom noted that Fuentes's attention and concentration were moderately impaired.  (*Id.*).  According to Ransom, Fuentes could count backwards, perform two out of three simple calculations, but had difficulty with serial threes.  (*Id.*).  Ransom opined that Fuentes's attention and concentration appeared impaired by depression, anxiety and limited intellectual

capacity.  (*Id.*).  Ransom found Fuentes's immediate memory skills moderately impaired.  (*Id.*).

According to Ransom, Fuentes could recall one out of three objects immediately and could

complete three digits forward and two digits backward.  (*Id.*).  Ransom opined that Fuentes's

insight was good, but that his judgment was poor because he continued to consume alcohol.

(*Id.*).

   According to Ransom, Fuentes could follow and understand simple directions and

instructions, perform simple tasks independently, maintain attention and concentration for tasks,

maintain a regular schedule and learn simple tasks.  (*Id.*).  Ransom opined that Fuentes would

have moderate difficulty performing complex tasks independently, relating adequately with

others and appropriately dealing with stress due to major depressive disorder, currently

moderate, panic disorder without agoraphobia, currently moderate, and probable borderline

intellectual capacity.  (*Id.*).  According to Ransom, Fuentes's prognosis was fair.  (*Id.*).

   On May 21, 2010, agency medical consultant Dr. M. Apacible ("Apacible")

completed a Psychiatric Review Technique.  (Tr. 202-15).  Apacible concluded that Fuentes's

mental impairments did not meet or equal a listed impairment.  (Tr. 202, 205, 207, 210).

According to Apacible, Fuentes suffered from mild limitations in his activities of daily living and

moderate limitations in his ability to maintain social functioning and to maintain concentration,

persistence or pace.  (Tr. 212).  In addition, according to Apacible, there was insufficient

evidence to determine whether Fuentes had suffered from repeated episodes of deterioration.

(*Id.*).  Apacible completed a mental Residual Function Capacity ("RFC") assessment.  (Tr.

216-19).  Apacible opined that Fuentes suffered from moderate limitations in his ability to

understand, remember and carry out detailed instructions; work in coordination with or

proximity to others without being distracted by them; complete a normal workday and workweek

without interruptions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; respond appropriately to changes in a work setting; travel in unfamiliar places or use public transportation and set realistic goals or make plans independently of others.  (Tr. 217). According to Apacible, Fuentes is able to perform the basic demands of simple, unskilled work. (Tr. 218).

On April 5, 2011, Scanlon completed a Psychological Assessment for Determination of Employability form regarding Fuentes.  (Tr. 220-24).  Scanlon indicated that Fuentes had been a patient for approximately six months.  (Tr. 221).  Scanlon opined that Fuentes was moderately limited in his ability to follow, understand and remember simple directions and instructions, to perform simple and complex tasks independently, to maintain attention and concentration for rote tasks, to regularly attend to a routine and maintain schedule, to maintain basic standards of grooming, and to perform low stress and simple tasks.  (Tr. 223). The form provided that "moderately limited" meant that an individual would be unable to function approximately ten to twenty percent of the time.  (*Id.*).  According to Scanlon, Fuentes was unable to participate in any activities except treatment or rehabilitation for the next three months.  (*Id.*).

On April 19, 2011, Fuentes was evaluated by an addiction counsel at Rochester General Hospital Addiction Services.  (Tr. 225-37).  Fuentes was diagnosed with alcohol abuse and depression, not otherwise specified.  (Tr. 237).  The counselor assigned Fuentes a Global Assessment of Functioning of 51.  (*Id.*).

On July 13, 2011, Scanlon completed a medical source statement for Fuentes. (Tr. 281-84). This form defined moderate limitations as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (Tr. 282). Scanlon assessed that Fuentes had moderate limitations in his ability to understand, remember and carry out simple and complex instruction and make judgments on simple and complex work-related decisions. (*Id.*). In addition Scanlon noted that Fuentes "has had difficulty maintaining employment and regular schedule." (*Id.*). Scanlon opined that Fuentes's symptoms were likely to persist in the absence of mood-altering substances. (*Id.*).

## III.   <u>Non-Medical Evidence</u>

Fuentes reported that he previously worked as an assembly worker, a chemical handler and an office cleaner. (Tr. 171). According to Fuentes, he worked as an office cleaner on a part-time basis, working approximately four hours each day, for five days each week. (*Id.*). Fuentes indicated that he was paid at an hourly rate of $ 8.50. (*Id.*). In his application, Fuentes reported that he worked as an office cleaner during the latter part of 2004 and early part of 2005. However, during the administrative hearing, Fuentes testified that he worked as an office cleaner for "almost a couple of years." (Tr. 43). Fuentes's earning records indicate that he worked at Perfection Cleaning Services between 2003 and 2005. (Tr. 155-56). According to those records, in 2003 Fuentes earned $ 616.50 from Perfection Cleaning Services. (Tr. 155). During that same year, Fuentes earned $ 27,258.39 from Eastman Kodak Company ("Kodak") and $ 211.57 from the United States Postal Service, resulting in total annual earnings of $ 28,086.46. (*Id.*). In 2004, Fuentes earned $ 2,992.00 from Perfection Cleaning Services, $ 17,683.84 from Kodak, $ 2,241.30 from Applied Coatings Inc., $ 448.46 from the United States Postal Service, and

$ 252.00 from the Mercantile Adjustment Bureau LLC.  (Tr. 156).  His total yearly earnings in

2004 were $ 23,617.60.  In 2005, Fuentes earned $ 853.13 from Kodak and $ 726.00 from

Perfection Cleaning Service.  (*Id.*).  That same year, he earned $ 3,084.63 from Applied Coatings

Inc., resulting in annual earnings of $ 4,663.76.  (*Id.*).

   At the administrative hearing, Fuentes testified that he last worked on a full-time

basis in February 2009 as a chemical handler in a temporary position at Kodak.  (Tr. 40).

Fuentes testified that he was previously employed as a chemical handler for Kodak, but was laid

off and subsequently rehired as a third-party contractor.  (Tr. 42-43, 60).  According to Fuentes,

in 2010 he worked as an assembly line worker for approximately four weeks, but had to quit due

to his anxiety.  (Tr. 42-43).  According to Fuentes, his job duties as an officer cleaner included

vacuuming, mopping and emptying trash cans.  (Tr. 43).

   Fuentes testified that he has experienced anxiety and depression for

approximately fifteen years.  (Tr. 44, 49).  According to Fuentes, in 2009 and 2010 his mental

state was aggravated by ongoing legal issues, including a recent divorce from his wife, as well as

a DWI charge in November 2010.  (Tr. 44-46).  Fuentes testified that he has difficulty sleeping

and panics in the middle of the night.  (Tr. 46).  According to Fuentes, his inability to sleep

causes attendance problems at work and causes him to be fatigued during the day, which affects

his ability to concentrate.  (Tr. 47).  Fuentes testified that the medication he has been prescribed

to aid his sleep causes morning drowsiness.  (Tr. 53).

   Fuentes explained that he constantly worries and experiences crying spells

approximately three times a month.  (Tr. 47).  Fuentes testified that panic attacks cause him to

isolate himself in his house and neglect his personal hygiene.  (Tr. 50-51).  According to Fuentes,

he does not associate with friends or family.  (*Id.*).

Fuentes testified that he has custody of his eleven-year-old son every Tuesday, Thursday and every other weekend during the school year. (Tr. 48, 62). According to Fuentes, he has custody of his son every other week during the summer. (*Id.*). Fuentes testified that when he has custody of his son, he goes grocery shopping and provides food and clothing for his son, with assistance from his sister and brother. (Tr. 63).

A vocational expert, Marie Queathe ("Queathe"), also testified during the hearing. (Tr. 35, 66-71). The ALJ first asked Queathe to characterize Fuentes's previous employment. (Tr. 66). According to Queathe, Fuentes had previously been employed as a chemical inserter, assembler worker and officer cleaner. (Tr. 67).

The ALJ then asked Queathe whether a person of the same age as Fuentes, with the same education and vocational profile, who was limited to jobs involving simple, routine and repetitive tasks, with only occasional changes in the work setting and only occasional judgment and decision-making, and only occasional interaction with the general public, who could work at all exertional levels would be able to perform any of the work that Fuentes previously performed. (Tr. 68-69). Queathe opined that such an individual would be unable to perform the previously-identified positions of chemical inserter, but would be able to perform the previously-identified positions of assembler worker and officer cleaner. (Tr. 69). The ALJ then asked Queathe whether the same individual could perform those jobs if he was limited to only occasional interactions with coworkers. (*Id.*). Queathe opined that such an individual could not perform the job of assembler worker, but could perform the job of office cleaner. (*Id.*).

Counsel for Fuentes asked Queathe whether an individual who was absent from work two days per month would have difficulty maintaining employment. (Tr. 70-71). Queathe agreed that he would. (*Id.*).

## DISCUSSION

I.     **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if they are

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  When assessing whether a claimant is disabled, the ALJ

must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982) (*per curiam*).  The five-steps are:

> (1)     whether the claimant is currently engaged in substantial
>           gainful activity;
>
> (2)     if not, whether the claimant has any "severe impairment"
>           that "significantly limits [the claimant's] physical or mental
>           ability to do basic work activities";
>
> (3)     if so, whether any of the claimant's severe impairments
>           meets or equals one of the impairments listed in Appendix
>           1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)     if not, whether despite the claimant's severe impairments,
>           the claimant retains the residual functional capacity to
>           perform his past work; and
>
> (5)     if not, whether the claimant retains the residual functional
>           capacity to perform any other work that exists in significant
>           numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

A.    **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  (Tr. 23-31).  Under step one of the process, the ALJ found that Fuentes has not engaged in substantial gainful activity since February 26, 2009, the alleged onset date.  (Tr. 25). At step two, the ALJ concluded that Fuentes has the severe impairment of depression.  (*Id.*).  The ALJ concluded that Fuentes's other impairments, including migraine headaches, lower and upper back pain, arthritis, anxiety, shortness of breath, dizziness, frequent vomiting, chronic pain, tiredness and panic attacks, are not severe.  (*Id.*).  With respect to Fuentes's mental impairments, the ALJ found that Fuentes suffers from moderate difficulties in maintaining concentration, persistence or pace and social functioning and mild difficulties in performing activities of daily living.  (Tr. 26-27).  At step three, the ALJ determined that Fuentes does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (*Id.*).  The ALJ concluded that Fuentes has the RFC to perform the full range of work at all exertional levels, but is limited to jobs involving simple, routine, repetitive tasks involving up to three step commands, with only occasional changes in the work setting and only occasional judgment and decision making, and only occasional interaction with the general public or coworkers.  (Tr. 27).  At step four, the ALJ determined that Fuentes is able to perform his prior work as a janitor.  (Tr. 31).  Accordingly, the ALJ found that Fuentes is not disabled.  (*Id.*).

B.      **Fuentes's Contentions**

Fuentes contends that the ALJ's determination that he is not disabled is not supported by substantial evidence.  (Docket # 11-1).  First, Fuentes contends that the ALJ's mental RFC assessment is not based upon substantial evidence because it relied upon Ransom's findings.  (*Id.* at 6-8).  In addition, Fuentes contends that his previous employment as a janitor was not performed at a level of substantial gainful activity, and therefore does not qualify as "past relevant work" within the meaning of 20 C.F.R. § 404.1565(a).  (*Id.* at 8-11).

II.     **Analysis**

A.      **ALJ's RFC Assessment**

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 380 F. App'x 231 (2d Cir. 2010).

Fuentes contends that the ALJ's mental RFC assessment[3] was flawed because the ALJ improperly afforded great weight to Ransom's opinion. (Docket # 11 at 6-8). Specifically, Fuentes argues that Ransom's opinion is not entitled to "great weight" because Ransom was a "one-time examiner" and mistakenly believed that Fuentes had never been employed. (*Id.*). Further, Fuentes argues that the ALJ failed to explain why he determined to afford "great weight" to Ransom's opinion. (*Id.*).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)). In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

> (1)  the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2)  the evidence in support of the physician's opinion,
>
> (3)  the consistency of the opinion with the record as a whole,
>
> (4)  whether the opinion is from a specialist, and
>
> (5)  whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Spielberg v. Barnhart*, 367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House v. Astrue*, 2013 WL 422058, *2 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

---

[3]  Fuentes does not challenge, and thus the Court will not analyze, the ALJ's physical RFC assessment. (Docket # 11-1).

As an initial matter, I disagree that Ransom's opinion is not entitled to "great weight" because she only examined him on one occasion. "The opinion of a consultative examiner can constitute substantial evidence supporting an ALJ's decision." *Leisten v. Colvin*, 2014 WL 4275710, *14 (W.D.N.Y. 2014) ("[t]he report of a consultative physician who examines the [p]laintiff and reaches conclusions based upon a one-time examination may constitute substantial evidence in support of the ALJ's decision") (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) and *Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).

I also disagree that the ALJ failed to explain the weight that he afforded to Ransom's opinion. In his decision, the ALJ discussed Ransom's opinion at length. (Tr. 28-29). He noted Ransom's observations obtained from her evaluation of Fuentes and discussed the opinions she offered regarding Fuentes's limitations. (Tr. 29). Specifically, the ALJ recognized that Ransom had diagnosed Fuentes with major depressive disorder and anxiety disorder, but had concluded that Fuentes retained the ability to follow and understand simple directions and instructions, perform, schedule and learn simple tasks independently, and maintain attention and concentration, despite his moderate limitations performing complex tasks, relating adequately with others and appropriately dealing with stress. (*Id.*). The ALJ afforded "great weight" to Ransom's opinion based upon her opportunity to examine Fuentes, as well as her expertise in the field. (*Id.*).

Furthermore, the ALJ properly determined that Ransom's opinion was well-supported by the objective evidence in the record and was consistent with the other evidence contained in the record. (*Id.*). Specifically, Ransom's opinion is consistent with the conclusion reached by Apacible who, despite assessing that Fuentes had moderate limitations in some categories of work-related functioning, opined that Fuentes retained the ability to perform

15

simple, unskilled work.  (Tr. 216-18).  Fuentes argues that Ransom's opinion should be

discounted because she mistakenly believed that Fuentes had never been employed.  (Docket

# 11-1).  Notably, the ALJ represented during the hearing that he would consider this argument

in weighing Ransom's opinion (Tr. 56), and nothing in the record indicates that he failed to do

so.  In any event, Ransom's apparent confusion regarding his work-history does not justify

discounting her opinion in its entirety.  Accordingly, I conclude that the ALJ adequately

explained his reasoning for affording strong weight to Ransom's opinion and that his mental

RFC determination is supported by substantial evidence.[4]

## B. ALJ's Step Four Determination

I turn next to Fuentes's challenge to the ALJ's step four determination.  (Docket

## 11-1 at 8-10; 15 at 1-3).  Fuentes contends that remand is warranted because he did not

perform his prior employment as a janitor at a level that constituted substantial gainful activity

under the earnings guidelines and that his job as a janitor thus cannot be considered "past

relevant work."  (*Id.*).

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an

inability to . . . perform [his] past relevant work."  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d

Cir. 2003).  Under the regulations, past relevant work is defined as "work that you have done

within the past 15 years, that was substantial gainful activity, and that lasted long enough for you

to learn to do it."  20 C.F.R. § 404.1560(b)(1).

---

[4] Although not clearly articulated in his motion, to the extent that Fuentes challenges the ALJ's mental RFC determination on the grounds that the ALJ improperly rejected the medical assessments of the "treating and 'non-medical' sources," I conclude that such challenge does not warrant remand.  The ALJ provided good reasons for assigning "little weight" to the opinions of Scanlon (Tr. 220-24, 281-84) and the evaluation completed by the addition services counselor (Tr. 225-37).  (Tr. 29-30).  In any event, I conclude that these opinions are not inconsistent with the ALJ's conclusion that Fuentes could perform simple, routine, repetitive tasks involving up to three-step commands with occasional limitations involving judgment, change and interaction with others.

Substantial gainful activity is "work activity that is both substantial and gainful."
20 C.F.R. § 404.1572.  Work activity is "substantial" if it "involves doing significant physical or
mental activities," and it is "gainful" if it is "the kind of work usually done for pay or profit,
whether or not a profit is realized."  *Id.*  Work that is done on a part-time basis may be
considered substantial.  *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) (citing 20
C.F.R. § 404.1572(a)).

In determining whether a claimant's past relevant work constitutes substantial
gainful activity, "primary consideration" should be given to the earnings the claimant derived
from the work activity.  20 C.F.R. § 404.1574(a)(1).  The regulations provide earnings guidelines
that "set a floor for earnings that presumptively constitute substantial gainful activity."  *See*
*Parker v. Astrue*, 2009 WL 3334341, *3 (N.D.N.Y. 2009).  "Although earnings below the
guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful
activity, earnings below the guidelines will not conclusively show that any employee has not
engaged in substantial gainful activity."  *Pickner v. Sullivan*, 985 F.2d at 403 (citing 20 C.F.R.
§ 404.1574(a)(1)); *see Parker v. Astrue*, 2009 WL 3334341 at *3 ("the ALJ may consider a
claimant's past work, even if the earnings from that work fall below the guidelines").

The record suggests that Fuentes worked as an office cleaner in 2003, 2004 and
2005.  (Tr. 155-56, 171).  According to regulatory earnings guidelines, if Fuentes's monthly
earnings during those years met or exceeded $ 800, $ 810 and $ 830, respectively, then a
rebuttable presumption arises that he engaged in substantial gainful activity for those years.[5]  *See*
20 C.F.R. § 404.1574(b)(2)(i)-(ii); *see also* Social Security Administration Program Operations

---

[5]  The guidelines provide that a claimant's earnings beginning in 2001 and each year thereafter ordinarily
will show that he engaged in substantial gainful activity if the earnings increased over the previous year or the
average monthly earnings were more than $ 700, adjusted for changes in the national wage index.  *See* 20 C.F.R.
§ 404.1574(b)(2)(i)-(ii).

Manual System ("POMS") DI 10501.015, *available at*

[https://secure.ssa.gov/poms.nsf/lnx/0410501015](https://secure.ssa.gov/poms.nsf/lnx/0410501015)).  In his application for DIB, Fuentes

represented that when he was employed as an officer cleaner, he worked five days per week for

four hours per day at an hourly rate of $ 8.50 per hour.  (Tr. 171).  Based upon this

representation, both parties agree that Fuentes earned approximately $ 736 per month –

somewhat below the $ 800 to $ 830 monthly earnings set forth in the guidelines for 2003-2005.

(Docket ## 11-1 at 9; 13 at 6-7).  Fuentes argues that because his earnings did not meet these

guidelines, this Court should order a remand.

        As stated above, however, the regulatory threshold levels are only guidelines, and

work activity that falls short of the guidelines may still be considered past relevant work as long

as it involved physical or mental activity and is the type of work typically conducted for pay.

According to the record, Fuentes was employed for several years as an office cleaner engaging in

vacuuming, mopping and trash removal duties.  Certainly, his janitorial employment involved

physical or mental activity and was of a kind typically performed for pay.  Although the

evidence does not establish that his earnings were above the presumptive threshold, his earnings

were sufficiently close to permit me to conclude that the ALJ properly considered his

employment as an office cleaner as "past relevant work."  *See Reeder v. Apfel*, 214 F.3d 984, 989

(8th Cir. 2000) (claimant's previous seasonal employment could be considered past relevant

work even if earnings fell below guidelines where the claimant performed the employment long

enough to learn the job and where the work was of a type that is normally done for pay); *Pickner*,

985 F.2d at 403 (claimant's previous part-time employment properly considered where it

involved "significant physical and mental activities" and where it was "the kind of work usually

done for pay or profit, even though her earnings were minimal"); *Cook v. Astrue*, 2012 WL

4356261, *4 (M.D. Fla. 2012) ("[p]laintiff worked as a school bus driver for over two years; she

clearly learned how to do the job[;] . . . it is the type of job usually done for pay and involved

significant physical or mental activities[;] [a]ccordingly, notwithstanding the fact that

[p]laintiff's earnings fell just below the guidelines, the [c]ourt concludes [p]laintiff's work as a

school bus driver was substantial gainful activity, and substantial evidence supports the ALJ's

finding that this job constituted past relevant work"); *Nishke v. Astrue*, 878 F. Supp. 2d 958, 987

(E.D. Mo. 2012) ("[e]arnings below the guidelines will not conclusively show that an employee

has not engaged in substantial gainful activity"); *Wade v. Astrue*, 2012 WL 1004728, *3

(N.D. Ohio 2012) ("[t]he Magistrate Judge also correctly acknowledged that the regulations do

not establish a bright line rule regarding what constitutes substantial gainful activity[;] . . .

[r]ather, they set a level of earnings that presumptively constitute substantial gainful activity");

*Hearod v. Astrue*, 2011 WL 3648269, *15 (E.D. Mo.) ("[p]laintiff's [employment] was

substantial gainful activity, and the ALJ properly considered it to be past relevant work even

though her earnings, averaged through the entire year, did not meet the earning guidelines of the

[r]egulations"), *report and recommendation adopted*, 2011 WL 3648620 (E.D. Mo. 2011).  The

ALJ's determination in this case is supported by substantial evidence, especially considering that

Fuentes's earnings records reveal that he had multiple jobs in 2003 and 2004, suggesting that he

was employed as an office cleaner on a part-time basis because it was not his primary

employment.[6]  *See Reeder v. Apfel*, 214 F.3d at 989 (claimant's previous employment was

properly considered past relevant work where "her low earnings [were] more the result of her

choice to work only seasonally than an indicator of a physical or mental inability to work the

---

[6]  The records indicate that Fuentes was employed at Kodak between 2000 and 2005. (Tr. 155-56).  In 2003, he earned $ 27,258.39 and in 2004 he earned $ 17,683.84 from that employment.  (*Id.*).  Fuentes represented he worked twelve hours per day, four days per week at Kodak. (Tr. 44-45, 171).  Fuentes testified that he obtained permanent employment at Kodak in 2000 and maintained that employment until 2004, when he was laid off. (Tr. 60).

entire year"); *Pickner*, 985 F.2d at 403 (claimant's previous employment properly considered where her "low earnings were in part due to the fact that she was either self-employed or worked only part-time"); *Nishke v. Astrue*, 878 F. Supp. 2d at 987 (evidence tended "to demonstrate that plaintiff's low earnings in the cited jobs were more likely the result of her choice regarding her work schedule than an indication of a mental inability to perform the jobs that the presumptive substantial gainful activity level"); *Hearod v. Astrue*, 2011 WL 3648269 at *14 ("[t]he record in this case supports the conclusion that plaintiff learned the job and was capable of performing it for, as she reported, eight hours per day, five days per week[;] [p]laintiff's low earnings appear to be more the result of her choice to obtain work through a temporary agency, rather than an indication of a physical or mental inability to perform the work throughout the year").

Fuentes urges the Court to ignore the representations he made in his application for benefits, arguing that the Court should rely instead solely upon the earnings documented in his earnings statement contained in the record, which he contends demonstrates that he actually earned far below the monthly threshold levels set forth in the guidelines.  (Docket # 15 at 2-4).  According to Fuentes, in 2004 he only earned $ 2,992 working as an office cleaner, an amount which averages to approximately $ 250 per month.  (*Id.* citing Tr. 156).  Although under certain circumstances a claimant's earning statement may provide the best evidence of the claimant's monthly earnings, Fuentes's earning statement in this case fails to indicate the duration of his employment as an office cleaner during any given year; thus, Fuentes's monthly earnings may not be derived from the annual totals on the report.[7]  Nor does any other evidence in the record

---

[7]  Not only do the earnings records fail to establish the number of months each year that Fuentes was employed as an office cleaner, but Fuentes's argument also assumes that Fuentes was employed as an office cleaner only for Perfection Cleaning Service – a fact not established by the record.  (Tr. 155).  In addition to being employed by Perfection Cleaning Service, Fuentes was also employed by the United States Postal Service, Applied Coatings Inc. and Kodak in 2004.  (*Id.*).  According to his hearing testimony, he was employed as a chemical handler at Kodak.  Yet, nothing in the record establishes the type of work he did at the United States Postal Service or Applied Coatings, Inc.

illuminate that question.[8]  In the absence of such evidence, and given Fuentes's representation

that he earned approximately $ 736 per month as an office cleaner, I conclude that remand is not

warranted on the basis of Fuentes's earnings statement.  *See Amos v. Astrue*, 2014 WL 1324389,

*5 (S.D. Miss. 2014) (plaintiff's annual earnings as reflected in her earnings statements did not

warrant rejection of her admissions concerning her monthly earnings; "[p]laintiff, who bears the

burden of proof through step four of the process, failed to produce evidence of the number of

months she worked at each job or was unemployed" and the ALJ was therefore unable to

calculate her monthly averages based upon her annual earnings); *Wade v. Astrue*, 2012 WL

1004728 at *3 ("[p]laintiff failed to provide any evidence regarding what th[e] denominator [by

which to divide annual earnings in order to derive monthly averages] should be[;] [p]laintiff,

who has the burden of proof at step four of the sequential analysis, has thus failed to establish

that, based on her earnings alone, the ALJ erred in finding that her job as a bench assembler was

substantial gainful activity and past relevant work"); *Ruiz v. Astrue*, 2011 WL 1648792, *4

(S.D. Cal. 2011) ("the tax records indicate only earnings from an employer during a calendar

year-not the number of months worked by the individual during that year-and therefore do not

clearly establish that [claimant] earned less than [the threshold set forth in the guidelines]");

*Hearod*, 2011 WL 3648269 at *14 ("it is not appropriate to average plaintiff's earnings over the

entire year when the record does not support the conclusion that she worked every month of the

year").

---

[8]  In his application for benefits, Fuentes stated that he worked as an office cleaner for approximately four months in 2004 and five months in 2005.  Those statements, however, are inconsistent with his earnings statement, which suggests that he was first employed as an office cleaner in 2003.

## CONCLUSION

This Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED**.  Fuentes's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and Fuentes's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


_____
                    _s/Marian W. Payson_
                    MARIAN W. PAYSON
                    United States Magistrate Judge


Dated: Rochester, New York
          February 13, 2015